UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

WANDER DURAN DE LA ROSA,

         Petitioner,

   v.                                                                     20-CV-383-LJV
                                                                              DECISION & ORDER
WILLIAM P. BARR, *Attorney General*;

THOMAS FEELEY, *Field Director for
Detention and Removal, Buffalo Field
Office, Bureau of Immigration and
Customs Enforcement*; and

JEFFREY SEARLS, *Facility Director,
Buffalo Federal Detention Facility*,

         Respondents.[1]

———————————————————————

Wander Duran De La Rosa has been detained in United States Department of

Homeland Security custody since November 15, 2018—more than twenty months.  *See*

Docket Item 5-2 at 4.  On March 26, 2020, De La Rosa filed a *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the

Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.  Docket Item 1.  On

---

[1] In its memorandum of law, the government argues that the only proper
respondent in this matter is Jeffrey Searls, "the person with direct control over [De La
Rosa]."  Docket Item 6 at 14.  "Because resolution of who is the proper respondent will
not affect the disposition of this petition, the Court will not address it further."  *Khemlal v.
Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014).  It is clear that, at the
very least, Searls "has the *immediate custody* of the party detained, with the power to
produce the body of such party before the court or judge, [so] that he may be liberated if
no sufficient reason is shown to the contrary."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435
(2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

June 1, 2020, the respondents answered the petition, Docket Items 5 and 6; and on June 16, 2020, De La Rosa replied, Docket Item 7.

For the reasons that follow, this Court grants De La Rosa's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

De La Rosa is a native and citizen of the Dominican Republic. *See* Docket Item 1 at 7; Docket Item 5-2 at 2. He was admitted to the United States as a Lawful Permanent Resident on March 25, 2002. Docket Item 1 at 7; Docket Item 5-2 at 2.

On June 28, 2006, De La Rosa was convicted in New York State Supreme Court, New York County, of criminal sale of a controlled substance in the third degree. Docket Item 5-1 at 2, 15-16. The Appellate Division, First Department, affirmed that conviction, and the New Your State Court of Appeals denied De La Rosa leave to appeal. *Id.* at 15-16, 19. For reasons unclear from the record, the conviction subsequently was vacated, however, and on September 13, 2010, De La Rosa was convicted of criminal possession of a controlled substance in the third degree. *Id.* at 44. He moved to vacate that conviction under New York Civil Procedure Law § 440.10 on July 18, 2019, arguing that he received ineffective assistance of counsel. Docket Item 7 at 33. It appears that the motion is still pending. *Id.* at 3.

On February 14, 2018, De La Rosa was convicted of criminal possession of a controlled substance in the third degree, apparently in connection with a different incident. Docket Item 5-1 at 30, 37. He appealed that decision to the Appellate

Division, First Department, on February 26, 2018.  Docket Item 7 at 26.  It appears that this appeal also is pending.  *Id.* at 4.

On November 15, 2018, De La Rosa was taken into DHS custody.  *See* Docket Item 5-2 at 4.  DHS served De La Rosa with a "Notice to Appear," charging that he was subject to removal from the United States under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.[2]  Docket Item 5-1 at 20-22.  More specifically, DHS charged that De La Rosa was subject to removal under section 1227(a)(2)(B)(i) for having been convicted of a controlled-substances offense in February 2018.  *Id.*  DHS amended that notice on November 30, 2018, adding a second charge under section 1227(a)(2)(B)(i) for having been convicted of a controlled-substances offense in September 2010.  *Id.* at 39-40.

On November 13 and 19, 2018, DHS determined that De La Rosa would be detained pending removal.  *Id.* at 25-26.  De La Rosa challenged his continued detention, but an Immigration Judge ("IJ") found on January 28, 2019, that De La Rosa was subject to mandatory detention under 8 U.S.C. § 1226(c) and therefore ineligible for release on bond.  *Id.* at 60.  On June 6, 2019, De La Rosa petitioned this court for a writ of habeas corpus.  *See id.* at 88-102.  Hon. Michael A. Telesca denied that petition without prejudice on November 7, 2019.  *Id.*

---

[2] DHS first served De La Rosa with a "Notice to Appear" on September 14, 2006, charging that he was subject to removal under section 1227(a)(2)(B)(i) for having been convicted of a controlled-substances offense in June 2006 and sections 1227(a)(2)(A)(iii) and 1101(a)(43)(B) for having been convicted of an aggravated felony, namely illicit trafficking in a controlled substance in June 2006.  *See id.* at 9-11.  That case was terminated on January 4, 2007, because De La Rosa had appealed his conviction.  *See id.* at 13-14.

On January 28, 2019, an IJ determined that De La Rosa was subject to removal. *Id.* at 72. De La Rosa applied for relief from removal on April 1, 2019. *Id.* After various continuances, the IJ denied De La Rosa's applications on June 21, 2019, and ordered him removed from the United States. *Id.* at 71-81. De La Rosa appealed the denial to the Board of Immigration Appeals ("BIA"), which remanded to the IJ on December 2, 2019. *Id.* at 82, 105-06. An IJ again denied De La Rosa's applications on February 21, 2020. *Id.* at 108-13. De La Rosa again appealed. *Id.* at 114. That appeal remains pending with the BIA.

## DISCUSSION

### I. HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that De La Rosa is validly detained under 8 U.S.C. § 1226(c) as a noncitizen convicted of committing a controlled substance offense. Docket Item 5 at 1.

De La Rosa disagrees on three grounds. First, he contends that his detention for over six months is unlawful under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Docket Item 1 at 15. The Court construes De La Rosa's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably

4

foreseeable future."[3]  *See Zadvydas*, 533 U.S. at 701.  Second, De La Rosa argues that his "indefinite" detention violates his right to substantive due process under the Fifth Amendment of the United States Constitution.  Docket Item 1 at 15.  And third, he argues that his detention without "a timely and meaningful opportunity to demonstrate that [he] should not be detained" violates his right to procedural due process under the Fifth Amendment of the United States Constitution.  Docket Item 1 at 16.

## II. STATUTORY CHALLENGE

This Court begins by considering the statutory basis for De La Rosa's detention in order to evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. at 701.

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id.* at 53.  "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id.* at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

---

[3] Because De La Rosa is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id.* at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

De La Rosa has asked the BIA to review the IJ's decision, so his order of removal is not yet administratively final.  Because De La Rosa is not detained under section 1231(a), the Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III. DUE PROCESS

De La Rosa also alleges that his continued detention violates the Due Process Clause.  *See* Docket Item 1 at 4.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty."  *Id.* (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id.* "This requirement has traditionally been referred to as 'procedural' due process."  *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690.  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . .

or, in certain special and narrow nonpunitive circumstances, . . . where a special

justification, such as harm-threatening mental illness, outweighs the individual's

constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in

original) (citations omitted).  Other than those unique, special, and narrow

circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a

person's liberty.  That promise stands as one of the Constitution's most vital protections

against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373

(2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful,

have long been recognized as 'persons' guaranteed due process of law by the Fifth . . .

Amendment[ ]." *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v.*

*United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who

have once passed through our gates, even illegally, may be expelled only after

proceedings conforming to traditional standards of fairness encompassed in due

process of law.").  At the same time, Congress has "broad power over naturalization and

immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to

citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S.

67, 79-80 (1976)).

## A.    Substantive Due Process

De La Rosa argues that his detention violates his right to substantive due

process.  Docket Item 1 at 15.  He has been in DHS custody since November 15,

2018—more than twenty months.  *See* Docket Item 5-2 at 4.  But this Court cannot say

that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51

(2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

De La Rosa also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 16.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry," *Hemans*, 2019 WL 955353, at *5.  "A[t]

the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1.    De La Rosa's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. De La Rosa has been in DHS custody since November 15, 2018—more than twenty months. *See* Docket Item 5-2 at 4. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts

have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[4]

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

De La Rosa's twenty-month detention far exceeds the four-month average cited in *Demore;* indeed, it is five times that average. The length of De La Rosa's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of De La Rosa's detention. *Sajous v.*

---

[4] *See, e.g.*, *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months" and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").

*Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a BFDF employee regarding the conditions of De La Rosa's detention.  *See* Docket Item 5-3.  In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," they "do not face the same level of restrictions typical for someone held at a prison," and they "ordinarily may move throughout the BFDF without being required to wear handcuffs or legcuffs."  *Id.* at 3-4.  "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night.  *Id.* at 3.  And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ("SHU")."  *Id.* at 4.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there.  *Muse*, 2018 WL 4466052, at *5.  And while the record contains no facts about the particular conditions of De La Rosa's confinement, he may well have been locked in a cell because, as the government repeatedly highlights, he has a criminal history.  So the government has not shown that De La Rosa's detention is "meaningfully different from [detention in] a penal institution."  *Sajous*, 2018 WL 2357266, at *11.  This factor therefore weighs in De La Rosa's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process. A [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6). Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id.*

Here, DHS charged that De La Rosa was subject to removal on November 15, 2018. He first was scheduled to appear before an IJ on December 21, 2018. *See* Docket Item 5-1 at 51. The IJ granted his various requests to adjourn through April 9, 2019, so that he could prepare his applications for relief from removal. *See id.* at 51-59, 61-69, 72. De La Rosa filed his applications on April 1, 2019, and appeared for proceedings on April 9, 2019, and May 3, 2019. *See id.* at 72. After May 3, 2019, the delays were not attributable to De La Rosa. The IJ did not issue a decision until June 21, 2019; after De La Rosa promptly appealed to the BIA, the BIA did not issue its

remand order until December 2, 2019; the IJ did not issue a new decision until February
21, 2020; and after De La Rosa promptly appealed that decision to the BIA, the BIA has
yet to issue its decision.  *See id.* at 72, 105-06, 108-13, 114.

In short, although De La Rosa has caused some of the delay in his removal, he
has not "abus[ed] the processes provided to him."  *See Hechavarria*, 891 F.3d at 56 n.6
(quoting *Nken*, 556 U.S. at 436).  He adjourned the proceedings early on to apply for
relief from removal; otherwise, he has done nothing more than challenge his removal
and appeal the IJ's decision to the BIA.  The government decision makers, in contrast,
collectively are responsible for over thirteen months of delay.  Therefore, the third factor
weighs in De La Rosa's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a
final order of removal.  This Court declines to weigh the merits of De La Rosa's claims
pending before the BIA.

After balancing all these factors, this Court finds that De La Rosa's detention has
been unreasonably prolonged.  Therefore, this Court turns to the second step of the
two-part inquiry to determine what remedy his unreasonably-prolonged detention
demands.

### 2.    The Process Due to De La Rosa

"The fundamental requirement of due process is the opportunity to be heard 'at a
meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting
*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates
of due process generally requires consideration of three distinct factors," *id.* at 335,
namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that

interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that De La Rosa's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

De La Rosa's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). De La Rosa has an obvious interest in his "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), De La Rosa has not conceded his deportability, and the resolution of that issue remains pending before the BIA. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest. De La Rosa claims that his two children are United States citizens. *See* Docket Item 7 at 2. These family members live not in the Dominican Republic, where the government wishes to send him, but in the United States, where De La Rosa himself has lived for about eighteen years. *See id.* Thus, if De La Rosa chose not to challenge his removal, he would "lose

the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining De La Rosa also may be strong. The government contends that De La Rosa's risk of flight and disregard for the law justify his continued detention. Docket Item 6 at 11-12. In fact, De La Rosa is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[5]   *Id.* at 846. Thus, in mandating the detention of criminal aliens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[6]). "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in

---

[5] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[6] The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these aliens on bond, it is not clear that *all* of the aliens released were in fact given individualized bond hearings." (emphasis in original)).

preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to De La Rosa's liberty interests.  Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846.  Now that De La Rosa's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the

16

safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[7]  This requires consideration of less restrictive alternatives to detention.  *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

De La Rosa's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

De La Rosa must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decision maker that De La Rosa's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decision maker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond

---

[7] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## IV.    LIMIT ON TRANSFERRING DE LA ROSA

De La Rosa also has asked this Court to order the respondents and their "agents not to remove [him] from the jurisdiction of this Court during the duration of the consideration of this petition." Docket Item 1 at 16.

Now that this Court has conditionally granted De La Rosa's writ, his jurisdictional concerns are not unreasonable. After all, "conditional writs 'would be meaningless' if a habeas court could not determine compliance with them and order sanctions accordingly." *Mason v. Mitchell*, 729 F.3d 545, 549 (6th Cir. 2013) (quoting *Satterlee v. Wolfenbarger*, 453 F.3d 362, 368 n.5 (6th Cir. 2006)). But "[it] is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *See Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). In other words, regardless of where De La Rosa is housed, this Court retains jurisdiction over his habeas petition. So there is no need to interfere with DHS's authority to "arrange for appropriate places of detention" under 8 U.S.C. § 1231(g)(1).

## V.    REQUEST TO STAY REMOVAL

Finally, De La Rosa has asked this Court to stay his removal pending resolution of his claim before the BIA. Docket Item 1 at 16. The Real ID Act of 2005, 8 U.S.C. § 1252, strips district courts of jurisdiction to review a final order of deportation. *See De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). "[B]ecause district courts have no jurisdiction to review final orders of removal, they have no

18

jurisdiction to review requests for stays of removal." *Al-Garidi v. Holder*, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009).  As it lacks jurisdiction, this Court denies De La Rosa's request to stay his removal.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release De La Rosa from detention unless a neutral decision-maker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that De La Rosa's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure De La Rosa's appearance and the safety of the community—that is, even with conditions, De La Rosa presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a written copy of the IJ's decision.


SO ORDERED.

Dated:          July 20, 2020
                Buffalo, New York


                                    _/s/ Hon. Lawrence J. Vilardo_
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE